J-S23022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOMAR HOLDEN, | |
| Appellant | No. 1373 EDA 2014 |

Appeal from the Order Entered April 10, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1208541-2005

BEFORE: DONOHUE, SHOGAN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 20, 2015**

Appellant, Jomar Holden, appeals *pro se* from the April 10, 2014 order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. After careful review, we affirm.

We previously summarized the facts of the underlying crime as follows:

> Police found the victim [Jules Bartlett] suffering from numerous gunshot wounds at 3:40 a.m. on June 26, 2005. The victim was able to tell police that he was shot inside the home of Vita Dubose ("Dubose"), who is the mother of two of Appellant's children. Although Dubose initially told police that she and Appellant were asleep at Appellant's house at the time of the shooting, she retracted that statement the next day and admitted that she and Appellant were present at the house.

---

[*] Retired Senior Judge assigned to the Superior Court.

* * *

Appellant had initially lived with [Dubose] . . . but she testified that, at the time of the shooting, Appellant no longer lived with her and did not have a key to her house. Appellant alternated between her house and his mother's house at 8th and Jefferson Streets. On at least two occasions prior to the night of the shooting, Appellant had entered her house by taking out the second floor air conditioner and climbing in through the window. On the evening of June 25, 2005, Dubose went to her cousin Keisha's house in the Wynnefield section of the city to attend a birthday celebration for her uncle. Her brother and [Bartlett,] the victim, who she had met about a year and a half earlier through her brother, were in attendance also. This was the first time she had seen the victim since they met initially. Appellant was not at the celebration. Later in the evening, Dubose, her brother and several others left the birthday celebration to go to her girlfriend's house at 59th and Master Street to a cookout. Dubose rode to the cookout in the victim's vehicle because her brother's car was full, and she had left her car at her mother's house. Between 10:30 PM and 1:30 AM, Appellant called Dubose on her cell phone approximately 5-6 times, purportedly to ask about the children who were spending time in Harrisburg with a relative. After the party, the victim drove [Dubose's] cousin home first, then decided that Dubose was too intoxicated to drive and took her keys. The victim drove Dubose to her house . . . and opened the door for her with her key. The victim came in and they sat, in separate chairs, and watched television.

About 3:20 AM, while watching television, they heard a scraping noise upstairs that sounded like the air conditioner was being moved from the front bedroom window. The victim got up from the sofa and went up the stairs to investigate. Dubose testified that, when he went up the stairs, he did not have a gun in his hand and she had no guns in her house. Seconds after he went upstairs, Dubose

heard 6-7 gunshots. She then saw the victim stumble down the stairs and collapse in the dining room. The victim had blood on his shirt in the chest area. Appellant came down the stairs behind the victim with a black gun in his hand. Appellant put the gun in his pants pocket and told Dubose to come with him. Dubose did not observe any blood on Appellant. Appellant told Dubose that they had to go someplace far away. He put her in a black car and drove to her mother's house where Dubose had left her car. When they reached Dubose's mother's house, they got into Dubose's car and drove to her sister's house in Willingboro, New Jersey, arriving at approximately 5:30 AM. During the ride, Dubose asked Appellant why he did it[,] and Appellant told Dubose that he thought the guy had a gun. After about twenty minutes, Appellant said his sister had an asthma attack, and they left her sister's house and drove back to Philadelphia to Appellant's cousin's house near 24th and Huntingdon Streets. They sat in Dubose's car outside the house[,] and Appellant again told Dubose that he thought the victim had a gun, and that she could not say anything about the shooting because he would get into trouble. After about ninety minutes, Appellant got out and Dubose drove to her mother's house, picked up her niece and drove back to 1143 Marlyn Road.

When she arrived at her house, there was a police car out front and the police would not permit her to enter the house. While she was outside of her house, Appellant called her cell several times. Appellant told her not to say anything to the police, and to only tell them that she was not home when the shooting happened. . . .

*Commonwealth v. Holden*, 2288 EDA 2009, 26 A.3d 1192 (Pa. Super.

filed March 15, 2011) (unpublished memorandum at 1–3).

The PCRA court explained the ensuing procedural history as follows:

On May 08, 2007, following a bench trial, [A]ppellant was convicted of voluntary manslaughter-unreasonable belief,

- 3 -

possession of an instrument of crime (PIC), criminal mischief, and multiple violations of the Uniform Firearms Act, for the killing of Jules Bartlett (Bartlett).

\* \* \*

Upon conviction, [A]ppellant was sentenced to an aggregate term of 20-40 years confinement. Post sentence motions were denied. On March 15, 2011, the Superior Court affirmed the judgment of sentence.[1] [A]ppellant's petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied on September 14, 2011.[2] On May 6, 2012,[3] [A]ppellant timely filed a pro se PCRA petition claiming that he was entitled to relief because of violations of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place and multiple claims of ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. PCRA counsel was appointed,[4] and on January 2, 2014, filed a <u>Finley</u> letter

---

[1] **_Commonwealth v. Holden_**, 2288 EDA 2009, 26 A.3d 1192 (Pa. Super. filed March 15, 2011). This Court rejected the propriety of Appellant's claim of self-defense in the context of the sufficiency of the evidence and his contention that the sentence imposed was excessive.

[2] **_Commonwealth v. Holden_**, 29 A.3d 371 (Pa. filed September 14, 2011).

[3] The docket indicates that the original PCRA petition was lost, and Appellant was required to resend the petition. The copy was received on July 3, 2012, but the "filing date [was] adjusted to 5/6/12." Docket Entry No. 19, 5/6/12.

[4] PCRA counsel was appointed on August 31, 2012. The record lacks explanation for the delay from the time of counsel's appointment until the filing of his brief pursuant to **_Commonwealth v. Turner_**, 544 A.2d 927 (Pa. 1988), and **_Commonwealth v. Finley_**, 550 A.2d 230 (Pa. Super. 1988) (*en banc*).

indicating that he had reviewed the trial transcripts, the court file and dockets, all prior filings available, all letters and material sent to him by the petitioner, discovery provided by trial counsel, and trial counsel's file, and determined that each of the issues raised in [A]ppellant's pro se petition were meritless and that he could find no other meritorious issues to be raised in an amended petition. On March 7, 2014, following the Court's independent review of [A]ppellant's claims, the relevant case law and the record, and after determining that counsel's Finley letter was adequate, the Court filed and served on [A]ppellant, a Rule 907 Notice of Intent to Dismiss along with counsel's Finley letter. On April 10, 2014, [A]ppellant's petition for PCRA relief was formally dismissed and PCRA counsel was permitted to withdraw. This appeal followed.

PCRA Court Opinion, 8/21/14, at 1–3 (footnote omitted). The PCRA Court did not direct Appellant to file a concise statement pursuant to Pa.R.A.P. 1925.

Appellant raises a single issue for our review, as follows:

Whether the PCRA Court erred as a matter of law and/or abused its discretion in denying and/or dismissing without a hearing Appellant's claim that he was denied due process of law and a fair trial, as guaranteed by Article I, § 9 of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution, where the trial court failed to consider a lesser included offense of involuntary manslaughter, 18 Pa.C.S. § 2504?

Appellant's Brief at 4.

When reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings and will not

disturb them unless they have no support in the certified record. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014).

To be eligible for post-conviction relief, Appellant must show "[t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). Section 9544 of the PCRA defines "waived" as follows: "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544; ***see also Commonwealth v. Collins***, 957 A.2d 237, 246 (Pa. 2008) (same). Instantly, Appellant asserts that he was denied due process of law because the trial court "failed to consider the lesser included offense of Involuntary Manslaughter, which was an equally supportable verdict based upon the evidence adduced at trial." PCRA petition, 5/6/12, at 30; Appellant's Brief at 10. Appellant has not raised the issue in the context of ineffective assistance of counsel. As Appellant could have raised this issue in his direct appeal to this Court but did not do so, it is waived. ***Commonwealth v. Lambert***, 797 A.2d 232, 240 (Pa. 2001) (PCRA petitioner's issues that could have been raised on direct appeal but were not, are waived under 42 Pa.C.S. § 9544(b)).

Even if not waived, the issue lacks merit. The PCRA Court addressed the issue, "notwithstanding that [the] claim [is] waived," and stated as follows:

> Furthermore, [A]ppellant's complaint that his due process
> right was violated when the [c]ourt allegedly failed to consider

the lesser included offense of involuntary manslaughter is likewise meritless. Appellant claims that involuntary manslaughter was "an equally supportable verdict based upon the evidence adduced at trial, and where two equally reasonable but mutually inconsistent inferences can be drawn from the same set of facts the court may not . . . relieve the Commonwealth of its burden to disprove self-defense beyond a reasonable doubt . . . [.]" As "proof" that the [c]ourt did not carefully consider all possible charges before reaching its decision, [A]ppellant states that while it took him "several hours" to review the jury instructions, the applicable statutes, and related case law, the [c]ourt reached a verdict in "only ten minutes." However, [A]ppellant fails to appreciate that the [c]ourt has presided over numerous jury and nonjury criminal trials, including homicide trials and manslaughter trials, both voluntary and involuntary, since 1999, and is thoroughly familiar with the elements necessary to prove a defendant guilty beyond a reasonable doubt in cases such as [A]ppellant[']s. The fact that the [c]ourt, an elected judge with years of experience on the bench, did not take as long as [A]ppellant would have liked to reach its verdict is not proof of any error on the part of the [c]ourt or any indication that the [c]ourt did not consider all charges. Moreover, [A]ppellant is really challenging the sufficiency of the evidence that convicted him, a claim that was litigated on direct appeal and is unreviewable here.

PCRA Court Opinion, 8/21/14, at 4, 6 (footnotes omitted).

Furthermore, where, as here, "a case is tried to the court rather than a jury, we presume that the court applied proper legal standards." **Commonwealth v. Hunter**, 554 A.2d 550, 558 (Pa. Super. 1989) (citing **Commonwealth v. Donofrio**, 372 A.2d 859, 860 (Pa. Super. 1977) ("The Judge is imbued with the knowledge of the law that he would have given in a formal charge in a jury case.")). Thus, even if not waived, the issue Appellant seeks to raise lacks merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2015